Filed 8/11/14  P. v. Preciado CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B244918 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA392869) |
| v. | |
| BRANDON PRECIADO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig Richman, Judge.  Affirmed.

Klapach & Klapach and Joseph S. Klapach for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Roberta L. Davis and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Brandon Preciado appeals from the judgment following his convictions for multiple offenses involving domestic violence. We affirm.

## FACTS AND PROCEEDINGS

At 2:30 in the morning, on January 12, 2012, a neighbor of appellant Brandon Preciado heard someone crying in the neighbor's living room. The neighbor followed the sound and discovered appellant's wife. (To protect the privacy of appellant's wife, we refer to her as "wife" without using her name.) The neighbor had never seen wife before and did not know her. Wife said that appellant had beaten her and asked the neighbor to call 911. The transcript of the neighbor's 911 call, which was introduced into evidence, records that the neighbor told the 911 operator that appellant had beaten wife with a flashlight. After the neighbor called 911, sheriff's deputies arrived and found wife shaking and injured, with a swollen face and bleeding lip, a bite mark on her cheek, and bruises on her arms and legs. The deputies arrested appellant.

The People charged appellant by information with 19 counts arising from eight episodes of domestic violence by appellant against wife from September 2011 to January 2012, the details of which are mostly unimportant to our review. The allegations, which appellant denied, charged multiple attacks involving corporal spousal abuse, assault with a deadly weapon, assault by means likely to produce great bodily injury, and one count of making criminal threats. For every episode of domestic violence, the jury convicted appellant of crimes, either as charged in the information or for a lesser related offense. For domestic violence on September 18, 2011, the jury convicted appellant of assault, misdemeanor battery, assault with a deadly weapon (a belt), and corporal injury to a spouse; for October 28, 2011, the jury convicted appellant of corporal injury to a spouse; for November 11, 2011, the jury convicted appellant of corporal injury to a spouse; for January 1, 2012, the jury convicted appellant of corporal injury to a spouse and two counts of assault by means likely to produce great bodily injury; for January 4, 2012, the jury convicted appellant of misdemeanor battery and two counts of misdemeanor assault; for January 9, 2012, the jury convicted appellant of assault with a deadly weapon (a

baton) and corporal injury to a spouse; for January 10, 2012, the jury convicted appellant of assault by means likely to produce great bodily injury; and for January 12, 2012—the day of his arrest—the jury convicted appellant of assault with a deadly weapon (a flashlight), corporal injury to a spouse, and making criminal threats. The court sentenced appellant to state prison for 12 years four months. This appeal followed.

## DISCUSSION

### A. *Recusal of Prosecutor Was Not Required*

The People called wife as a trial witness. The prosecutor's examination of wife initially focused on the events of January 12. Wife testified at trial she and appellant had been drinking that evening and got into an argument during which she hit appellant, who then slapped her. They began to wrestle, during which wife continued to hit appellant, who responded by hitting her legs. Breaking free, wife ran out of the house and went inside the house of a neighbor, whom she asked to call 911. Other than the events of January 12, wife denied appellant had at other times threatened, choked, or beaten her.

Wife's denial of domestic violence on dates other than January 12 contradicted her statement to sheriff's investigators following appellant's arrest and her sworn preliminary hearing testimony, in which she described multiple beatings over many months. Faced with wife's denial of other beatings, the prosecutor impeached wife with her preliminary hearing testimony. Wife disavowed, however, her preliminary hearing testimony, saying she had been lying. According to wife, the prosecutor had coerced wife's false preliminary hearing testimony by threatening to have child welfare authorities take custody of appellant and wife's three children unless wife testified against appellant. "Q: Is that your testimony at the preliminary hearing? [¶] A: Yeah, after you threatened me when I said I didn't want to testify. You threatened me and my kids with social services if I didn't testify."

Immediately upon hearing wife's accusation against her, the prosecutor requested a sidebar, which the court granted. The prosecutor told the court and defense counsel that

3

a dependency case involving the children was pending "because of the police report," but she told the court that she had never interviewed wife alone and denied threatening wife, telling the court "obviously, it (threats) didn't happen." Defense counsel responded by asking the court to recuse the prosecutor. Defense counsel argued: "I also would move the court to recuse the deputy district attorney from further administering of the trial. I think that, based on the evidence that's come out rather spontaneously, that she has now become a witness. [¶] THE COURT: Well, . . . potentially she has become a witness. But she's indicated that she's never interviewed . . . the witness on her own. But that, again, makes her a witness versus [wife]. But if [the prosecutor] has to testify as a witness in this trial, another deputy district [attorney] can represent the People's interest during that period of time. [¶] DEFENSE: I understand. [¶] THE COURT: So the motion to recuse [the prosecutor] is denied, if there was such a motion." Based on the court's closing aside, defense counsel in a seeming abundance of caution reiterated that he was making a motion for recusal. "DEFENSE: Your Honor, you did make one remark that . . . wherein you said if there was a motion. [¶] THE COURT: Okay. [¶] DEFENSE: And I wanted to make sure that I did make a motion. [¶] THE COURT: All right. The motion to recuse this particular D.A. is denied. I do not have the authority to recuse a particular D.A."

### 1. No Objection Was Made to the Timeliness or Procedural Status of the Recusal Motion

We assume for the sake of appeal that the motion to recuse was timely and procedurally proper; in any case, neither the court nor the prosecutor suggested that appellant's motion was untimely or procedurally defective.

### 2. The Trial Court Incorrectly Ruled That It Had No Authority to Recuse an Individual Prosecutor

At the close of the recusal hearing, defense counsel expressed concern that the trial court may not have understood that appellant was in fact making a motion to disqualify

4

the prosecutor trying the case, so counsel reiterated his motion. The trial court replied: "The motion to recuse this particular D.A. is denied. I do not have the authority to recuse a particular D.A."

The Attorney General asks us to review the court's ruling for abuse of discretion which is the correct standard of review for such a motion. But before we consider the merits of the ruling, we observe that the trial court was incorrect when it concluded it had no authority to recuse a particular district attorney rather than an entire prosecutorial office. (Pen. Code, § 1424, subd. (a)(1) [may recuse "a district attorney"]; *People v. Gamache* (2010) 48 Cal.4th 347, 361 [showing must be greater to recuse an entire prosecutorial office not "just an individual prosecutor"]; *People v. Hernandez* (1991) 235 Cal.App.3d 674, 676-677 [recusal of "a district attorney, or a district attorney's office"].)[1] The trial court's failure to recognize its authority is itself an abuse of discretion. (*Austin v. Valverde* (2012) 211 Cal.App.4th 546, 550.) More succinctly, the "failure to exercise discretion is an abuse of discretion." (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 449.)

The error does not require reversal because even if the trial court had exercised its discretion, no reasonable trial court would have recused the prosecutor based on wife's accusation standing alone. (See *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 768 [reviewing court "can affirm the ruling based on a discretionary ground that the court did not rely on only if the record compels the conclusion that any other decision would be an abuse of discretion and that no additional evidence relevant to the decision could be presented on remand"].) Recusal requires an actual conflict of interest, not merely a subjective perception of impropriety, that will result in the prosecutor's unfair treatment of the defendant. (*People v. Sy* (2014) 223 Cal.App.4th 44, 67-68 (*Sy*) [applying § 1424].) To permit recusal for an unsubstantiated accusation would allow any witness (or defendant) to prosecutor-shop for a prosecutor more to the accuser's liking. If it had become necessary for the prosecutor

---

[1]     All further section references are to the Penal Code.

5

to testify in response to wife's accusations, a sound approach was, as the court suggested, to have a colleague from the prosecutor's office represent the People while the trial prosecutor was on the witness stand. (Accord, *People v. Cannedy* (2009) 176 Cal.App.4th 1474, 1487 [recusal of entire district attorney's office not required merely because employee of the office is a potential witness].) Be that as it may, defense counsel did not accept the court's suggestion and the prosecutor was not called to testify. This belied appellant's assertion that the case hinged on a credibility contest between the wife's accusation of coercion and the prosecutor's denial.

In any case, the court's misapprehension of its authority was harmless here. (*People v. Vasquez* (2006) 39 Cal.4th 47, 66 [erroneous denial of recusal motion subject to harmless error review].) The trial court was not inclined to recuse the prosecutor even if the court had understood it had the authority to do so. Recusal of the prosecutor and her replacement by a colleague from her office would not likely have resulted in a more favorable outcome for appellant. Appellant asserts the prosecutor had a personal interest in seeing him convicted in order to clear her name of wife's accusation. The fear that a compromised prosecutor is not even-handed, fair, and dispassionate in exercising prosecutorial powers lies at the heart of the requirement that a prosecutor not have a conflict of interest in the case. (*Sy, supra*, 223 Cal.App.4th at p. 67.) But appellant points to nothing in the record to suggest a different prosecutor would have tried his case differently. The trial prosecutor was presumably trying her professional best to assure appellant's conviction on the charges against him, and appellant does not point to anything in the record to suggest that a different prosecutor would have tried any less hard or would have engaged in different litigation tactics that would have inured to his benefit. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 719 ["Only an *actual likelihood of unfair treatment*, not a subjective perception of impropriety, can warrant a court's taking the significant step of recusing an individual prosecutor or prosecutor's office."].)

*B.     Cross-examination About Calling "Social Services"*

After the sidebar in which the court denied appellant's motion to recuse the prosecutor, the prosecutor asked wife the following questions about wife's knowledge, if any, of the prosecutor's involvement with child welfare authorities concerning her children. "Q: You understand that I have nothing to do with social services. Correct? [¶] A: Well, then why did you say it? [¶] Q: You understand that I have nothing to do with social services. Is that correct? [¶] A: I don't know what you have to do with it. [¶] Q: . . . You understand I have had no conversations with anybody at social services. Correct? [¶] . . . [¶] The detective has. Is that your understanding? [¶] A: Correct. [¶] Q: Is it your understanding that I have? [¶] A: You and the detective were out there telling me that I don't want any trouble with social services. [¶] Q: That's not my question. Is your understanding that I had some conversation with social services? [¶] A: I don't know if you did or didn't." And in closing argument, the prosecutor in referring to wife's accusations against the prosecutor emphasized the prosecutor's noninvolvement with wife's children and child welfare authorities. The prosecutor told the jury: "[Wife] told the arresting officer what happened [in describing appellant's domestic violence], and then she told [her supervisor at work], and then she told Detective Jaime, and then she told her friend [at work], and then she told Detective Jaime again, and then she met with the Department of Children and Family Services and told them what happened. Then she met with me and testified. [¶] . . . [¶] She did not accuse any of those other people of doing anything wrong, only me. [¶] . . . The defense is trying to divert attention away from his client's actions to accuse me of doing something wrong. [¶] I'm going to remind you this trial is not about me. I am not on trial. The defendant is on trial. *My only role in this trial is really narrator*." (Italics added.)

Appellant notes that a prosecutor violates a defendant's guarantee of due process if the prosecutor uses deceptive or reprehensible means to attempt to persuade the court or jury (*People v. Hill* (1998) 17 Cal.4th 800, 845; *People v. Samayoa* (1997) 15 Cal.4th 795, 841), or engages in tactics that are sufficiently egregious to result in an unfair trial.

7

(*Samayoa*, at p. 841.)  It is improper for a prosecutor to present to the jury the prosecutor's unsworn testimony through questions of a "did you know" sort that pack into the questions premises or facts not in evidence.  (*People v. Hamilton* (1963) 60 Cal.2d 105, 116, overruled on another point by *People v. Morse* (1964) 60 Cal.2d 631, 637, fn. 2; *People ex rel. Dept. of Public Works v. Lillard* (1963) 219 Cal.App.2d 368, 379.)  Under that standard, a number of the prosecutor's questions were acceptable in asking wife whether, for example, certain people were present when the prosecutor and wife met, for those questions asked about wife's personal knowledge drawn from her own observations.  Other questions were more troubling.  Asking wife whether the prosecutor had, for example, called child welfare authorities seemed unlikely to elicit admissible testimony from wife, for wife was unlikely to know to whom the prosecutor spoke; at best, the question might elicit inadmissible hearsay.  Moreover, the way in which the prosecutor framed several of her questions—"you (wife) understand I have nothing to do" with child welfare authorities—let the prosecutor alert the jury to her denial of contacting child welfare authorities without having to take the stand, swear to tell the truth, and undergo cross-examination.  (*Hamilton*, at p. 116, overruled on another point by *Morse*, at p. 637, fn. 2; *Lillard*, at p. 379 [improper for prosecutor to introduce prosecutor's unsworn testimony through "did you know" questions].)

In the context of this part of the cross-examination of wife, the prosecutor's reference to herself as "narrator," may have lead to an incomplete picture of her role.  A narrator might suggest someone who is not an advocate but merely a neutral conduit for witnesses to convey facts to the jury.  By foreswearing her role as an advocate, and trying to wrap herself in the neutrality of narrator, the prosecutor came close to vouching for the merits of the People's case against appellant, as if she were saying she was not an advocate who presented the evidence in a manner most favorable to the People's theory of appellant's guilt, but rather a neutral narrator who just let the facts speak for themselves in order to let the truth emerge as it will.  (*People v. Superior Court* (*Greer*) (1977) 19 Cal.3d 267 ["the district attorney possesses the advocate's traditional ability to conduct his case in the manner he elects"].)

All the above notwithstanding, appellant did not object at trial to the prosecutor's questions beyond asserting the line of questioning was argumentative, but appellant does not pursue that objection on appeal, thus waiving that objection and any others he might have raised. (*People v. Avila* (2006) 38 Cal.4th 491, 609; *People v. McDermott* (2002) 28 Cal.4th 946, 1001.) Alternatively, and as a separate ground, the prosecutor's questions could not have reasonably affected the outcome of the trial. Wife's preliminary hearing testimony describing appellant's multiple incidents of domestic violence against her was consistent with how she described those events in her videotaped statement to sheriff's investigators after appellant was arrested. Additionally, some of the details she described—such as wearing sunglasses at work to cover a black eye while telling colleagues she had an eye infection—were corroborated by coworkers. Thus, even if the jury had not heard the prosecutor's unsworn implied denial of having contacted child welfare authorities, it is not reasonably probable that appellant would have achieved a more favorable outcome at trial.

C.    *Failure to Instruct Jury on Lesser Included Offense of Attempted Criminal Threats*
      *Was Harmless*

The People charged appellant with one count of making criminal threats. (§ 422.) The elements of the offense are: (1) appellant willfully threatened to kill or cause great bodily injury to wife; (2) appellant made the threat orally; (3) appellant intended that wife understand his statement to be a threat; (4) the threat was "so clear, immediate, unconditional, and specific" that it communicated to wife a "serious intention and the immediate prospect that the threat would be carried out"; (5) the threat caused wife to be "in sustained fear for her own safety"; and, (6) wife's fear was reasonable under the circumstances.

The People charged appellant with making criminal threats based on the events of the night of his arrest on January 12. Before wife escaped from the family home to the neighbor's house, appellant told wife that he was going to force her to hang herself in their garage and then he would kill himself. In closing argument, the prosecutor

9

summarized the People's case against appellant: "There is also a charge of criminal threats. . . . [¶] Here we have a really disturbing graphic criminal threat. 'Do you want to know how I will kill you?' And then the defendant says, 'I will march you into the garage at gunpoint. I will make you hang yourself. I will take the children to your mother's house. I will come back, and I will kill myself.' That left her in fear for her life. The defendant meant to scare her. [H]e certainly meant her to take it seriously. And she did take it seriously. [¶] Now, obviously as we heard there are lots of different threats to her life over this period of time. That's the threat we are talking about. 'I'll make you hang yourself in the garage.' That's the threat we are talking about."

Attempted criminal threat is a lesser included offense of making criminal threats. (*People v. Toledo* (2001) 26 Cal.4th 221, 226, 231.) The trial court had the duty to instruct on a lesser offense if evidence suggested the absence of one or elements might reduce the offense to something less than that charged. (*People v. Moon* (2005) 37 Cal.4th 1, 25.) An attempted criminal threat occurs if the threat does not make the victim actually fearful even if it would have been reasonable for the victim to be afraid. (*Toledo*, at pp. 226, 231.) Wife testified at trial that on January 12, she was not "terrified" and did not think she was "going to die that night." Based on that testimony, appellant requested a jury instruction on attempted criminal threats as a lesser offense of the charged offense of making criminal threats. The court refused, finding no substantial evidence of *attempted* criminal threats; the court reasoned that appellant was guilty of making criminal threats or of nothing. The court explained, "If the jury finds that Mr. Preciado had the intent and made the statements, it's either a 422 or not. It's not an attempted 422. The lesser included must be substantially supported by the evidence, and either he committed the offense or he did not. It's not an attempt."

The court erred because wife's testimony that she was not "terrified" and did not believe she "was going to die that night," if believed by the jury, could have negated the element of being in actual fear. Respondent asserts the court did not err because the evidence of appellant's guilt in making a criminal threat was overwhelming. In support of its assertion, respondent fairly characterizes the substantial evidence that supported

appellant's conviction for making a criminal threat, but gives short shrift to wife's testimony that she was not actually fearful, which is the testimony on which the attempted charge hinges. When competing versions of events exist, we let the jury sort out the facts. (*People v. Lacefield* (2007) 157 Cal.App.4th 249, 260.) The jury sorted such facts in weighing the evidence of appellant's other crimes involving his physical attacks of wife, sometimes finding him guilty of the charged offense, such as corporal injury to a spouse, and other times acquitting him of the charged offense and finding him guilty of a lesser offense, such as misdemeanor battery; in fact, the jury convicted appellant on a lesser charge for five of the 17 domestic violence counts against him.

Nevertheless, we conclude any error was harmless. As a theoretical proposition the jury *could* have believed wife when she said that she was not in fear of her life. But in assessing the prejudice attached to an error of this nature, we must ask: Is it reasonably *probable* the jury would have reached a result more favorable to the defendant if the absence of error? (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Or in this case: If the jury had been instructed on the lesser offense of attempted criminal threats was it reasonably probable the jury would have acquitted defendant of criminal threats and convicted him of the lesser offense?

The jury found defendant guilty of at least one offense for every episode of domestic violence between September 2011 and January 2012. Wife was fully aware that defendant was capable of severely assaulting her as he had done so repeatedly in the past. We do not have to recite all the threats defendant made to his wife. Instead, we focus on what defendant said as the prosecutor argued to the jury: "'Do you want to know how I will kill you?' And then the defendant says, 'I will march you into the garage at gunpoint. I will make you hang yourself. I will take the children to your mother's house. I will come back, and I will kill myself.'"

No reasonable jury would have found defendant not guilty of criminal threats and convicted him of the lesser offense.

11

*D.     Admitting Evidence That Appellant Was a Police Officer*

Before his arrest, appellant had been a Long Beach city police officer. The prosecutor filed a motion to question prospective jurors during voir dire about appellant's employment in law enforcement and to allow evidence on that subject during trial. Although appellant's occupation was in-and-of-itself, as counsel and the court acknowledged, irrelevant to the charges against him, appellant did not file an opposition to the motion. (*People v. Smith* (1922) 189 Cal. 31 [defendant's previous occupation irrelevant, even though he had been black jack dealer and charge was inducing minor to gamble].) Appellant appears to have accepted, perhaps grudgingly, that the jury was inevitably going to learn about his occupation as a police officer because it was embedded in other evidence that the jury was going to hear, such as the 911 call in which appellant's neighbor identified appellant as a police officer. Appellant did nevertheless resist voir dire about his occupation, while at the same time simultaneously asserting the need for counsel and the court to learn if prospective jurors would hold a police officer to a different standard of criminal liability. Counsel and the court eventually settled on agreeing to let the court, rather than the attorneys, mention appellant's occupation in voir dire in the hope that jurors would be less swayed by the information if they heard it from a neutral judge rather than the lawyers. Accordingly, the court told prospective jurors appellant had been a police officer. No juror said it would affect his or her ability to be fair.

At trial, wife testified during the prosecutor's introductory questions about her and appellant's background that appellant had been a police officer. Appellant contends the court erred in allowing evidence of his law enforcement background. Apart from the discussions among the court and counsel in which they struggled with what to let the jury learn during voir dire about appellant's occupation, appellant does not direct us to anyplace in the record in which he specifically objected to admission of evidence of his occupation. Perhaps his omission is not surprising given that the cat was already out of the bag in voir dire, making any further objection pointless.

12

In any event, even if it was error to let the jury learn appellant was a police officer, the error was harmless because no reasonable likelihood of a different outcome existed if jurors had not known appellant's occupation. Indeed, it is not clear which way appellant's law enforcement career cut as far as its effect on jurors. Appellant contends the jury necessarily condemned him as a "dirty" or "brutal cop" in hearing the evidence of his domestic violence. Maybe, maybe not. The jury's knowing appellant was a police officer may to the contrary have helped appellant by dispelling the slightly unwholesome undertone some jurors may have inferred from his having at home a baton and 12-to 18-inch flashlight, which some jurors might not have thought of as ordinary household objects. Additionally, some jurors may have been inclined to conclude appellant was less, not more likely, to commit serious crimes because of the dire job consequences of a felony conviction for a police officer, and the heightened risk popularly assumed to exist for police officers from other prisoners while incarcerated. Whatever the case, there is no reasonable probability that the jurors convicted appellant of any of his offenses because he had been a police officer.

**DISPOSITION**

The judgment is affirmed.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

13